JOHN F. ZEBLEY, APPELLANT, *v.* THE FARMERS' LOAN
AND TRUST COMPANY, RESPONDENT.

*Equity — purchase by a trustee under mortgage foreclosure for the benefit of bondholders electing to contribute — the option must be exercised in less than fourteen years.*

The complaint, in an action brought to compel an accounting by a trust company which had purchased certain mortgaged premises under foreclosure of the mortgage thereon, for the benefit of those bondholders who might come in and contribute, alleged that a railroad company executed to the defendant, a trust company, a mortgage to secure certain bonds, some of which the plaintiff owned; that the mortgage was foreclosed, and under a provision in the decree the trust company bought in the property for the benefit of such bondholders as should come in and pay upon their bonds their proportionate share of the cash sum which it was necessary to realize upon the sale; that the trust company afterwards sold the property to another railroad company, of which sale the plaintiff had no notice; that the plaintiff had at all times been ready to pay his share of such cash sum; and that, in 1887, which was fourteen years after entry of the decree of foreclosure, he had demanded of the trust company that it account, which demand was refused, and that the trust company had wrongfully converted the plaintiff's share in the property.

A demurrer was interposed to the complaint.

*Held,* that the complaint was bad and stated no cause of action.

That as the plaintiff had not paid, nor tendered his proportionate share of the cash sum, he had no interest in the purchase under the foreclosure which entitled him to call the trustee to account.

That the relation between the parties, failing payment or tender, was not that of trustee and *cestui que trust.*

That the trust company was not bound to wait indefinitely to see what bondholders might come in and pay their share of the amount paid on the foreclosure sale.

That it was obliged to wait for that purpose only a reasonable time, and that fourteen years was too great a delay upon the part of a bondholder. (O'BRIEN, J., dissenting.)

APPEAL by the plaintiff John F. Zebley from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 10th day of January, 1891, sustaining a demurrer to the amended complaint, and dismissing the latter, with costs; and also from an order, entered in said clerk's office on the 11th day of November, 1890, upon which the judgment was entered after a trial by the court of the issues of law at the New York Special Term.

*W. W. Hewett*, for the appellant.

*H. B. Turner*, for the respondent.

VAN BRUNT, P. J.:

This action was brought by the plaintiff, a bondholder of the New York and Boston Railroad Company, against the defendant as trustee under a mortgage given by said company. The plaintiff alleged the incorporation of the defendant; the incorporation of the New York and Boston Railroad Company; the execution of the mortgage; the issuance of the bonds; and that the plaintiff, before the commencement of this action, became, and still is, the owner and holder of eleven of said bonds with the coupons thereon; that said railroad company made default in payment of the interest on said bonds, and that thereupon the defendant, as trustee, elected that the principal of the bonds should become immediately due and payable in pursuance of the power conferred therein; that thereafter, on or about some day entirely indefinite, the defendant commenced an action in this court to foreclose the mortgage; and that on some day not mentioned a decree was entered directing a sale of the mortgaged premises, which decree provided that, in case there should be no *bona fide* bid in cash at such sale to an amount equal to that of all the bonds outstanding and secured by said mortgage, the defendant might bid for and purchase the premises, property and franchises so sold in behalf of all holders of such bonds and coupons, in proportion to the respective interests of such holders, at a price not exceeding the whole of such outstanding bonds and coupons, so much being payable in cash only as should be necessary to meet and defray the expenses of the action and the several payments in said decree directed to be paid in cash; and that said decree further provided that thereupon, and upon the payment by each bond or coupon holder of his proportionate share of such cash payments, such purchase should inure to the benefit of each such bondholder in the proportion of his interest as aforesaid; such sale, however, to be subject to certain liens.

The complaint further alleged that, on June 5, 1876, no cash bid being made therefor, the said railroad property, franchises, etc., were sold to the defendant in conformity with the before-mentioned

decree; that subsequently the New York, Westchester and Putnam Railroad Company was incorporated, and the defendant, in co-operation with the corporation, conveyed said mortgaged property to said persons or to said company for some consideration to plaintiff unknown, and that at all the times mentioned the eleven bonds alleged to be held by the plaintiff were outstanding, and the whole amount thereof, with interest, was due thereon.

The complaint further alleged that the plaintiff and the holders of said eleven bonds had no notice of the formation of said last-mentioned railroad company, or of said transfer by the defendant to said company, nor did said bondholders or this plaintiff in any wise assent or agree thereto; and that the New York and Boston Railroad Company was and is insolvent.

The complaint contains the further allegation that this plaintiff has at all times been ready to pay his reasonable share of the expenses of the defendant, if any there be; and has at divers times, particularly on the 16th of December, 1887, demanded that defendant account with him; and that defendant pay him his just and reasonable share of the value of said mortgaged property; and that the defendant has refused and still refuses so to account; and has wrongfully, and in violation of its duties as trustee, converted to its own use the share of the plaintiff; and judgment is demanded for an accounting.

The defendant demurs to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action; that the court has no jurisdiction of the action; and that there is a defect of parties defendant in that the New York, Westchester and Putnam Railroad Company is necessary to a complete determination of the questions raised therein. This demurrer was sustained and from the judgment thereupon entered this appeal is taken.

Without discussing the many interesting points upon this demurrer, there is one which stands at the threshold of the plaintiff's right to recover, which seems fatal to the cause of action stated in the complaint. It is there alleged that by the terms of the decree of foreclosure and sale the defendant might, under certain circumstances, purchase the property which was the subject-matter of the foreclosure action, and that thereupon, and upon payment by each bond and coupon holder of his proportionate share of the cash pay-

ments required to be made under the decree, such purchase should enure to the benefit of each such bond and coupon holder, etc. It is not alleged what the amount of this cash payment was, but the plaintiff does allege that he has been at all times ready and willing to pay his reasonable share of the expenses of the defendant, if any there be, and demands an accounting. But he nowhere alleges that prior to the commencement of this action or in this bill, that he has ever made any effort to pay or even to ascertain what he was in duty bound to pay prior to his acquiring any interest under the foreclosure sale. And it is clear from the expression used in his allegation of willingness to pay his reasonable share of the expenses, viz., " If any there be," that there is no admission upon his part of any obligation to pay anything. Now, as the interest of this plaintiff depended entirely upon the fact that he had paid his proportionate share of the expenses of the action and the several payments in the decree directed to be made in cash, until a tender of these amounts had been made, it is clear that he had no interest whatever in the purchase under the foreclosure action for which he was entitled to call the defendant to account. This payment was a condition precedent to the acquiring of an interest. Until it was made, or at least tendered, the defendant did not become his trustee for any purpose whatever. His claim upon the property was represented by the mortgage. By the foreclosure that claim was cut off, and it was only by coming in and paying his proportion of these various charges that he could acquire any interest in the purchase made by the defendant as trustee. The fact that this defendant did convey this property to another corporation was a matter of no interest or moment to this plaintiff or his predecessors in interest of the bonds of which he now claims to be the holder. As it appears upon the face of the bill the defendant owed to them no duty. The defendant was neither his trustee nor was he the defendant's *cestui que trust.*

This purchase was made under this decree in 1876 it would seem. When the sale was made to the New York, Westchester and Putnam Railroad Company does not appear. But can it be claimed for a moment that this trustee was bound to hold this property forever in order to see as to whether outstanding bondholders would come in and contribute their share of the expenses and cash payments as required

by the decree, and thus be entitled to share or have a voice in the disposition of the property purchased under the foreclosure sale. The action in question seems to have been instituted nearly fourteen years after this foreclosure sale, and all that the defendant was bound to do was to wait a reasonable time in order to enable these bondholders to come in and participate; and it does not appear that it did not do so.

It is certainly too late, fourteen years after the entry of this decree, for the holders of these bonds now to claim that they may come in and contribute and participate in the benefits of the foreclosure sale. If such a scheme is to operate, then there never could be, in the case of bonds passing from hand to hand, the closing up of a foreclosure suit upon a mortgage given to secure such bonds; and bondholders might lie quiet and wait and see what might be the result of the purchase by the trustee, and if advantageous to them, come in and contribute; and if it turned out badly, then stay out. Such is not the rule. Under a decree such as is alleged in the plaintiff's complaint, the bondholder must come in within a reasonable time and make himself a beneficiary under the trust, and if he does not do this, then the trustee may close out his trust without in any way consulting or notifying the defaulting bondholder.

It would seem to us to be almost too plain for argument, were it not for the fact that one of my associates thinks otherwise, that before an action of this kind can be maintained the party must be a beneficiary; and this plaintiff shows upon the face of his complaint that he is not a beneficiary, as he has not done those things which he is bound to do before he can participate in the trust.

The judgment should be affirmed, with costs.

PATTERSON, J., concurred.

O'BRIEN, J. (dissenting):

Although several grounds of demurrer were assigned, the one upon which the judgment was based was that the complaint did not state facts sufficient to constitute a cause of action.

In determining the sufficiency of the complaint it is not necessary for us to set it forth in full, and we shall, therefore, confine ourselves to a statement of such facts alleged therein as we deem necessary to dispose of the questions thus raised on this appeal.

The action is brought by the plaintiff, the holder of eleven bonds of the New York and Westchester Railroad Company, for an accounting from the defendant, the trustee, under which the bonds were issued. The complaint alleges the incorporation of the railroad company; the mortgage to the defendant; the default of the railroad company in the payment of interest and the election of the defendant trustee, that the whole principal and interest of the bonds should become due; that the trust company thereupon brought suit to foreclose the mortgage in which a decree and sale was had, and the property of the railroad company bought in by the trustee for the benefit of all the bondholders under the power contained in the trust deed. It is further alleged that the bonds so now held by the plaintiff were ascertained to be outstanding, and that after the purchase the trust company conveyed the railroad property to the company which was formed in re-organization of the company in default, in which re-organization the holder of these bonds had no part, and in which he declined and declines to come; and that demand has been made upon the trust company, but the trust company denies that he has any rights whatever. Upon these facts the plaintiff demands that the defendant account for the disposition made of the property after the foreclosure.

The respondent contends that the facts stated do not constitute a cause of action for the following reasons:

I. The plaintiff's claim is too stale and speculative to engage the attention of a court of equity.

II. If the plaintiff is entitled to any relief, it must be sought in the original foreclosure suit.

III. When the defendant bought in the property, it held the same as trustee under the provisions of the decree. To sustain any action against the trustee personally, it must be alleged and proved that the trustee was guilty of a breach of trust, and departed from the provisions of the decree.

IV. The conveyance by the trustee to the new railroad company, if made by order of court, cannot be impeached collaterally; and if made without such order, is a breach of trust and absolutely void.

V. The allegation as to conversion by the defendant is defective, and amounts to nothing.

In regard to the first, while it is true that a court of equity frequently declines to entertain claims which are too stale, and while the complaint itself shows that many of the transactions now sought to be inquired into occurred more than ten years ago, still we have allegations of want of notice and knowledge on the part of the plaintiff, which, in the absence of a bar by reason of the statute of limitations (which could only be raised under our practice by answer), entitle the plaintiff to present the facts to the court and then have a ruling thereon.

As to the second ground, that the plaintiff's relief, if any, must be sought in the foreclosure suit, this much need only be said. It may well be that the plaintiff might have intervened in that suit, and might have obtained the relief which he seeks in this. But that is all foreign to the question presented by the demurrer which relates to the question whether the allegations are sufficient in law to enable him to maintain this action, and that is the question to be hereinafter considered.

As to the third, we agree with the respondent, that when the defendant bought in the property it held the same as trustee under the provisions of the decree. It should, however, be remembered that there is no allegation in the complaint that all the property received by the defendant as trustee in the foreclosure suit was, by the terms of the decree or any order of the court, turned over to the new or reorganized company. It is true there is an allegation that the property was turned over; but there is an express statement that divers persons, having associated themselves together, formed, or attempted to form, a corporation; * * * that the defendant, in co-operation with said persons, thereafter conveyed said mortgaged property to said persons for the said company upon some consideration to the plaintiff unknown; and "that this plaintiff and the holders of said eleven bonds had no notice of the formation of said railroad company, or the said transfer of said property by defendant to said committee or company; nor did the said bondholders or this plaintiff in anywise assent or agree thereto; nor have they or he received any benefit or advantage under said so-called reorganization; but, on the contrary thereof, they and he have at all times elected to have their distributive share of the proceeds of said mortgaged property."

So far, therefore, as the complaint itself gives us any information upon the subject, it would appear that the defendant acquired the title to all the property of the mortgagor railroad and thereafter held the same as trustee, until, as alleged, it made a disposition thereof by transferring the same to another corporation, but for what consideration or under what arrangement, or whether it was the result of a decree or order of the court, is not made to appear. It seems to us reasonably clear, as an elementary principle, that where nothing else appears, and where the decree in foreclosure gave no specific directions as to the disposition to be made by the trustee of the property, that the defendant would hold the same as trustee for all the bondholders, subject, of course, to the terms and conditions fixed by the decree relating to the rights of the bondholders.

It was provided therein that upon payment by each bond or coupon holder of his proportionate share of the cash payment necessary to meet and defray the expenses of the action, and the other payments directed by the decree to be paid in cash, the purchase so made by the trustee should enure to the benefit of such bond or coupon holder in proportion to his interest. It appears that the plaintiff did not pay his proportion, but he asserts his readiness and willingness to pay his reasonable share of the expenses of the defendant, which, when taken in connection with the statement of the demand upon the defendant to account, was undoubtedly intended as a statement of willingness to comply with the condition precedent to obtain an interest in the property purchased upon the foreclosure by the trustee.

There can be no doubt upon a trial, upon a showing that this property pursuant to a decree or order of the court was transferred to the reorganized company, or upon a showing that the plaintiff was not entitled to any share or interest therein, that that would be a complete answer to the plaintiff's right to recover. It seems to us, however, upon the facts stated, that we cannot ignore plaintiff's right to know what became of the property which was purchased in the interest of the bondholders, except by assuming that the property purchased by the trustee was properly and lawfully disposed of. All these presumptions, however, do not destroy the plaintiff's right to have a statement from the trustee as to what was done with the property. The complaint does not allege that the property was

wrongfully conveyed to another corporation, but there is a statement that the property was converted by the defendant. Without giving any weight to that, being a conclusion unsupported by any facts otherwise alleged in the complaint, it still appears from the facts alleged that the property was transferred in some way and upon some consideration to the plaintiff unknown.

While we must, therefore, concede the respondent's fourth contention, that the conveyance by the trustee to the new railroad company, if made by order of the court, cannot be impeached collaterally, and if made without such order is a breach of trust and absolutely void, the fact still remains that the property having come into the possession of the defendant, as trustee for the plaintiff and the other bondholders, the plaintiff has a right to know in what manner and how the defendant has disposed of the same. Upon such an inquiry, to be entered upon at a trial after answer, the presumptions as to lawful disposition, and that what has been done was pursuant to the trust reposed in it, will all arise in defendant's favor. But it seems to us that the plaintiff has shown sufficient to entitle him to have the defendant, by answer, state just what was done with the property, and pursuant to what authority and upon what terms, to the end that it may be determined what, if any, rights he may have therein, and as to whether or not the defendant has received or holds, by reason of the transfer, any money or property to which the plaintiff is entitled. We do not hold that this is a right which may not have been lost by laches or default of plaintiff, these being questions which the trial court must decide.

Upon this demurrer, therefore, it will be seen that our view is that the abstract question of the power of the trustee to convey in good faith and for an adequate consideration is not involved. The proposition before the court is whether, upon facts showing that the trustee has come into the possession of the trust property, he can dispose of the same upon terms and conditions unknown to the *cestui que trust*, and thereafter refuse or deprive the latter of a right to know just what has been done with the trust fund. We have always regarded it as elementary that a *cestui que trust* had a right to demand of a trustee an accounting as to the administration of his trust; and in this respect there can be no distinction between the trustee of a railroad company and any other trustees, for the

reason that the former are governed by the general rules that govern trustees in the ordinary performance of the duties of a trust.

We are of opinion, therefore, that the judgment should be reversed, with costs to the appellant to abide the event, and with leave to the defendant to answer, without costs.

Judgment affirmed, with costs.